UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **CECIL SHAW,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 15-cv-199** |
| | ) | |
| **vs.** | ) | |
| | ) | **Judge Virginia M. Kendall** |
| | ) | **Magistrate Judge Rowland** |
| **COOK COUNTY, a municipal Corporation,** | ) | |
| **THOMAS DART, Sheriff of Cook County,** | ) | |
| **in his individual and official capacity,** | ) | |
| **SUPERINTENDENT BRANTLY,** | ) | |
| **SUPERINTENDENT GREER,** | ) | |
| **CMD. COZZOLINO, CMD HARRIS,** | ) | |
| **LIEUTENANT DELITZ,** | ) | |
| **LIEUTENANT ROSORIO,** | ) | |
| **LIEUTENANT TUGGEE,** | ) | |
| **SGT. WILLIAMS, SGT. NANOS, DR. YU,** | ) | |
| **DIRECTOR MENELLA, OFFICER** | ) | |
| **WHITE, OFFICER TORRES, OFFICER** | ) | |
| **ANSEL, OFFICER MCKENZIE, ALVIN** | ) | |
| **SHU and OFFICER O'MACKEY** | ) | |
| | ) | |
| **Defendants.** | ) | |

## SECOND AMENDED COMPLAINT

1.     This is an action for injunctive relief, for pecuniary damages and for declaratory relief brought pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. 2000; the Civil Rights Act 42 U.S.C. § 1983; 28 U.S.C. 1343; 28 U.S.C. 2201; the First Amendment and Fourteenth Amendment of the United States Constitution, and the common law and statutes of the State of Illinois.

2.      The incidents giving rise to this Amended Complaint occurred on or about January 25, 2014, at the Cook County Department of Corrections ("CCDOC"), more commonly known as the Cook County Jail, in Chicago, Cook County, Illinois.

3.      This case arises out of Defendants' denial of Plaintiff's access to Muslim Religious Services ("MRS"), religious head garments, prayer rugs, and religious diets.  Plaintiff also alleges religious discrimination and religious retaliation due to his Muslim religion; and the inappropriate, excessive use of force on January 25, 2014.  Plaintiff sustained permanent and serious back injuries on January 25, 2014 and was thereafter denied medical care.  Plaintiff has also suffered due to the Defendants' failure to carry out medical orders and Defendants' refusal to medically treat Plaintiff's various injuries.  This Complaint further arises out of Plaintiff being denied reasonable sanitary bedding, towels, clothing and a sanitary mattress.  Plaintiff has also suffered from mold, inadequate housing conditions, inadequate ventilation, leaks, defective plumbing, insufficient lighting and infestation by vermin and bugs.

4.      Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a).  Jurisdiction for Plaintiff's state claim is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the events giving rise to the claims asserted arose in this District and, upon information and belief, all parties reside in this Judicial District.

**Parties**

6.      At all relevant times pertaining to this Complaint, the plaintiff, Cecil Shaw, ("**Plaintiff**") was a resident of County of Cook, Illinois, and was and remains a pre-trial detainee at the CCDOC located in the City of Chicago, County of Cook, Illinois.

2

7.      At the time of this incident on January 25, 2014 and other related dates, all the individual officers referred to in this complaint knew that Plaintiff had requested access to his Muslim religion, were aware of Plaintiff's injuries and/were deliberately indifferent to Plaintiff's needs, requests and injuries.

8.      Plaintiff currently is in Division I of the CCDOC as of April 9, 2015 in Chicago, Illinois.

9.      At the time of the occurrence on January 25, 2014, Defendant Thomas J. Dart was the Sheriff of Cook County, Illinois, was responsible by law for maintaining custody of individuals committed to the CCDOC, and was also responsible for their safety and wellbeing.  Thomas J. Dart has direct policy making authority with respect to access to religion, medical attention and grievance procedures.

10.      Defendant Dart was the principal employer of Director Menella, Superintendent Brantly, Superintendent Greer, Commander Cozzolino, Commander Harris, Lieutenant Delitz, Lieutenant Rosorio, Lieutenant Tuggee, Sgt. Williams, Sgt. Nanos, Officer White (#8191), Officer Torres (#9716), Officer McKenzie (#9510), Officer Ansel, Officer O'Mackey, Alvin Shu, and Dr. Yu (collectively, the "Defendant Officers or Defendants") who are appointed and sworn CCDOC prison officers, with the exception of Dr. Yu.

11.      Defendant Officers all acted under color of law and in the course and scope of their duties and employment with Defendant Dart at all times relevant to this occurrence.

12.      The Defendant Officers are sued in their individual capacities.

13.      Defendant Cook County is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of the Defendant Officers.

14.     Defendant Cook County is the indemnifying entity for actions taken by Defendants Dart, the Defendant Officers and Dart's other employees; pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003).

### Facts As To Injuries Caused by Bed Bugs, Unsanitary Mattresses, Towels, Clothing and Cell Conditions

15.     Plaintiff processed into Cook County Jail on September 26, 2013. Plaintiff was being seen in the Division 1 dispensary some time in October 2013.

16.     Plaintiff told the nurse he needed treatment for rashes and that the rashes itched badly. No treatment was provided.

17.     Plaintiff was also being seen by the doctor the same day as to a separate matter and requested treatment for the rashes and itching. The doctor told the Plaintiff nothing was wrong and "the itching is in your head."

18.     On October 30, 2013, a week or so later Plaintiff found over 30 bed bugs on Plaintiff's clothes, bedding, mattress and his person.

19.     On October 31, 2013, Officer Perkins sent Plaintiff to Cermak Medical Emergency. The Plaintiff was then treated for injury caused by the bed bug infestation.

20.     Plaintiff was ordered to discard all of his bedding, commissary, purchased clothing and his mattress.

21.     Plaintiff attempted to file a grievance regarding the infestation and Plaintiff's injury sustained. To no avail, Plaintiff's grievance was not processed.

22.     Defendant Tom Dart is the sheriff for Cook County and is ultimately responsible for the conditions of Cook County Jail, including reasonable sanitary bedding, towels, clothing and a sanitary mattress.

#35127283_v3

## Facts as to the Denial of Muslim Religious Services

23.     Approximately 2 months after being processed into CCDOC, Plaintiff was moved to Division II.  Immediately, Plaintiff began to send requests to attend Muslim Religious Services ("MRS"),and Plaintiff asked to be notified of the times MRS were held.  Plaintiff never received a response, and was deprived of attending MRS.

24.     The Defendant Officers, when asked by the Plaintiff to attend MRS, stated that "we'll call you when we're told to call you" or "Muslim Service is not a big thing around here."

25.     The Muslim chaplain "Imam" comes to Division II twice per week, the same frequency as the chaplains of other religions.

26.     Plaintiff was not allowed to attend MRS for months despite Plaintiff's repeated requests.

27.     On December 4, 2013 the officer working Tier CD in Division II was aware that inmates at CCDOC were requesting MRS.

28.     At that time, about 7 Muslim detainees tried to attend MRS, but were unsuccessful. Defendant Sgt. Nanos came onto the tier looking for the Officer. Sgt. Nanos then told the officer, "These guys are terrorists, trying to go to learn how to plot terror.  You guys aren't going."

29.     Plaintiff was offended by Sgt. Nanos remarks.  Plaintiff spotted Defendant Lt. Tuggee and explained what Sgt. Nanos said to Plaintiff.  Defendant Lt. Tuggee stated to Plaintiff and those trying to attend MRS, "So what if he called you terrorist.  I'm sure you have been called worse.  It's not as if he's lying."  Lt. Tuggee further stated: "He said you can't go, you can't go." This religious discrimination continued despite Plaintiff repeated requests for MRS.

30.     Defendants Superintendent Brantly and Lt. Delitz were notified through grievances filed subsequently and they knowingly failed to act to provide MRS to Plaintiff.

31.     On December 8, 2013 this detainee was in the day room on Tier CD in Division II and the Defendant Lt. Rosorio gave a direct order for all detainees to "get off the phones, cut the TV off, get out the showers and sit down."

32.     The Salvation Army entered the deck and announced they were about to perform a Christian Festivity and Service.  Trumpets and music began.  Plaintiff and other Detainees who are Muslim requested not to be included in the Christian Festivity and Service for religious reasons. Plaintiff was denied this request and was forced to participate.

33.     Plaintiff was also forced to listen to a live band, music performance, bible lesson and prayer.  Plaintiff and other Muslim detainees on the tier were forced to sit, listen and participate as an audience member to a Christian service.

34.     Defendants Sgt. Williams and Sgt. Nanos both, on several occasions, would purposely interfere with MRS.  When Plaintiff was able to attend MRS rarely, Sgt. Williams and Sgt. Nanos would call the service late, leaving the Muslim Chaplain "Imam" Kalid Bilal waiting for over an hour, thus shortening MRS.

35.     Defendant Officers only allowed a few detainees to attend MRS thus leaving seats empty and over 90% vacant, unlike other religious services.  Defendant Officers interrupted MRS with their walky talkies blaring in the middle of prayer 10 minutes prior to the end of MRS purposely shortening the MRS and making it more difficult for Plaintiff to practice Plaintiff's religion.

36.     Other religious faiths at the CCDOC are treated better than Muslims.  They are called down multiple times a week and have services for an average of 1 and a half – 2 hours. Muslims inmates are treated as security risk/threats.  The Superintendent in charge of Division II, Superintendent Brantly, has directed  the shift commanders to call only a few wings out of 32 total

#35127283_v3

wings from Division II for MRS. Defendant Brantly is knowingly and deliberately preventing Plaintiff from the practice of his Muslim religion.

37.     Plaintiff asked Superintendent Brantly: "why do the Christians have their own tier and can get good time through Inmate Behavior Modification ("IBM") for practicing the Christian Faith, when Muslims do not get equal treatment." Brantly stated, "Send me a kit" meaning a request which Plaintiff did, but Plaintiff has not received an answer.

### Thomas Dart

38.     The Defendants who are responsible for denial of access to MRS in Division II are: 1) Thomas Dart because he oversees daily operations, gets reports on attendance Court of religious services and other special services at the facility. Thomas Dart gets memoranda and emails from the Executive Director of CCDOC about the issues at the facility regarding MRS. Thomas Dart is personally involved in the furtherance of these violations. Tom Dart also creates and enforces CCDOC policies on religious services.

39.     Executive Director John Murphy also is aware of Plaintiff's issues because CCDOC has a facility-wide problem with access to MRS; the problem is not limited to Division I and II. Also, John Murphy receives reports directly related to religious programs and service counts. Executive Director Murphy is responsible for continuing supervision of the management of all jail activities, including religious services. Executive Director John Murphy also oversees the daily operations at the facility.

40.     Superintendent Brantly is the superintendent of Division II. His superintendent responsibilities requires that he "plan, direct and supervise all operations at Cook County's Correctional Institutions based on the policies and general philosophies of the executive director. Superintendent Brantly had personal involvement in the violations and denial of MRS because he

has a direct hand in the supervising and directing the divisions to limit calling MRS; and in not providing proper remedies after numerous complaints.

### CCDOC Records

41.     Records are maintained in the ordinary course of CCDOC business which will indicate which living units were provided with the opportunity to attend religious services and how many detainees choose to attend or declined to attend.  If religious services are not held, the records should reflect the reason for lack of service.  Dart, Murphy, and Brantly all get reports of these "records" as required by general orders.  Each Defendant is personally involved in the deprivation of MRS.

42.     All detainees not otherwise subject to disciplinary measures resulting from rule violations are to be given equal access to attend religious services subject to space limitation, operational and security concerns.  Clearly Muslims being called on average of once every 3 months compared to Christians being called 2-3 times a week is not equal treatment.  Christians having their own tier where they can receive more IBM credit upon sentencing and then access to all IBM Programs is not equal.  Defendants are aware that their actions violated general CCDOC policy.

### Assault, Battery and Religious Retaliation Against Plaintiff on January 25, 2014

43.     On January 25, 2014 at about 10:00 A.M. MRS was announced over the loud speaker in Division II.  Plaintiff signaled Defendant Officer Torres, who was asleep face down on his desk for him to allow Plaintiff and others to attend MRS.  Defendant ignored the Plaintiff.

44.     Plaintiff then pushed the control button and requested the control officer to "call a 'white shirt'…"  The control officer stated, "I'm going to pop the door, ask the officer in the hall to speak to a white shirt if the Officer is not going to take you guys to the Chapel."

45.     The door unlocked, as advised by the control Officer, Plaintiff stepped in the hallway of C-Pod, and requested to the officer Defendant Officer Torres for permission to attend MRS. Defendant Officer Torres stated: "I don't feel like taking no one down stairs". Plaintiff then again requested to speak to a white shirt. Defendant Officer Torres stated "No."

46.     Defendant White then came from Westside of C-Pod's hallway and stared at Plaintiff. Plaintiff explained to Defendant White that plaintiff and others on Tier CD wanted to attend MRS and we have only been one time in 3 months.

47.     Defendant White bluntly stated: "Yo ass ain't going no were." Plaintiff then requested again to speak to a white shirt. Defendant White stated: "they don't run shit up here, you're in my house." Plaintiff stated: "I had words with you yesterday and I saw what you did to Franklin. You're not about to be putting your hands on me either." Defendant White then stated "I've dropped guys bigger than you," then began approaching the Plaintiff in a intimidative manner.

48.     Plaintiff was in fear for his life and safety. Defendant White, without warning, maliciously and sadistically pushed the Plaintiff. Plaintiff attempted to insulate himself from the push but to no avail. Defendant White then placed the Plaintiff in a bear hug. Plaintiff put his hands up in the air and told the Defendant White to "stop." After Defendant White's refusal to release the Plaintiff and Defendant White's continued assault and battery upon Plaintiff, Plaintiff used his elbows to try to pry Defendant White's arms from around him while in fear for his life and safety.

49.     Defendant White then became more aggressive and upset and struck the Plaintiff knocking him off balance. Plaintiff stumbled into the corner. Defendant Torres then began to rush plaintiff as well as grabbing the Plaintiff's leg. Plaintiff then fell to the ground where he was

#35127283_v3

punched, kneed, kicked and struck repeatedly. Defendant McKenzie struck Plaintiff in the head by throwing hand cuffs toward Plaintiff.

50.     Defendant Butler was on the stairs above and did not intervene to prevent these assaults against the Plaintiff.

51.     A 10-10 was called by Defendant McKenzie. Defendant Cozzolino and about 6-10 other officers rushed through the door onto C-pod.

52.     While Plaintiff was on the ground in handcuffs, Defendant Ansel fell on the Plaintiff's back, with his knees first assaulting the Plaintiff.

53.     Defendant White then placed his knee on the Plaintiff's neck. Plaintiff told both officers: "I can't breathe." Defendant White then took his knee and placed it on Plaintiff's face and told the Plaintiff "shut your face."

54.     Defendant Cozzolino ordered the officers to "let him up." Both Defendants White and Ansel continued to pounce of the Plaintiff's back and face with their knees. Defendant Cozzolino said again: "let him up." Defendant White then got up. Plaintiff again told Defendant Ansel: "Get off me, I can't breathe." Defendant Ansel then punched Plaintiff in the back of the head while in handcuffs and refused the order to get off Plaintiff.

55.     Defendant Cozzolino again repeated to Ansel: "let him up." Ansel finally got off Plaintiff.

56.     This inappropriate, excessive, unwarranted force was deliberately intended to cause harm to the Plaintiff and deny the Plaintiff his constitutional right to practice his Muslin religion.

57.     The Plaintiff presented no threat to any Defendants safety or the security of the facility. Defendant Cozzolino witnessed the misuse of force and still failed to reprimand the officials responsible.

#35127283_v3

## Denial of Emergency Medical Care

58.     After the above described assault the Plaintiff was taken to a holding cell, and was denied medical treatment by Defendant Santos.

59.     Officer Mirales then took Plaintiff to the dispensary and told the nurse: "Sgt. said just to eyeball this guy before he goes to seg."

60.     Plaintiff was taken directly back to the bullpen holding cell. Plaintiff sat close to 30 minutes while in intense pain. Plaintiff saw a nurse and hollered through the door for help stating: "the officers are denying medical attention." The nurse then ordered officers to bring Plaintiff to the dispensary.

61.     Plaintiff was treated by a nurse for numerous bruises to this face, head, neck, back, arms, legs and torso. The nurse stated she had provided a written order for Plaintiff to be taken to Stroger Cook County Hospital.

62.     Plaintiff was taken by officers to Cermak Hospital, despite the order. Plaintiff was examined and x-rayed. The care provided was ineffective. Plaintiff was given painkillers and told to "drop a request if the painkillers did not do the trick."

## Denial of Due Process

63.     Plaintiff was taken from Cermak to punitive segregation. Plaintiff was not served with disciplinary charges and had no chance to prepare a response. About 4 days later Plaintiff was given an incomplete disciplinary hearing by Defendant Alvin Shu where Plaintiff was asked a series of questions as to what occurred; and after, Plaintiff was read a series of charges which he pleaded not guilty to. Plaintiff was not given a chance to present witnesses or request video footage in his defense.

64.     Plaintiff's disciplinary hearing was cut short. A fight between cellmates took place on Div. 6-1Q which was declared an emergency. Plaintiff's hearing was being held at the same

#35127283_v3

time and Plaintiff was escorted by an officer back to his cell. Plaintiff was told he would be brought back to finish his hearing by the officer. This never happened.

65.     The next day, Plaintiff received his results from the inadequate hearing, and was found guilty on 109 and 304, but was found not guilty on the 500 charge. The Defendant Alvin Shu stated that Plaintiff's story was more plausible and credible as to the 500 resisting charge.

66.     The claim read to the Plaintiff in the hearing by Defendant Alvin Shu alleged Plaintiff was loud, disrespecting staff, and resisted the arrest by Defendant White.

67.     The report did not state any facts showing the 305 charge of disobeying a direct order. Still Plaintiff was found guilty as charged by Defendant Alvin Shu based on staff statements alone, despite the existence of witnesses not called who had observed Plaintiff being been assaulted by 4 different officers.

68.     Pursuant to the CCDOC jail procedure the Plaintiff filed an administrative appeal with Defendant Brantly pointing out that no witnesses were called, and the video was not reviewed.

69.     Defendant Brantly denied the Plaintiff's appeal. Plaintiff then spent 12 days in segregation, though he only received 11 days.

70.     Plaintiff also filed a grievance as to the assault by the Defendants. Plaintiff gave his grievance to CRW Worker Hollins who refused to process his grievance and registered Plaintiff's complaint with the Office of Professional Review (OPR). CCSO Directives state that administrative officials are to respond to grievances within 14 days. To no avail, Plaintiff received no reply.

## Denial of Medical Care and Insufficient Living Conditions After January 25, 2014

71.     Plaintiff never received adequate medical care while in Cermak Emergency after the assault. While in punitive segregation, Plaintiff submitted several requests and grievances as

12

to the injuries sustained during the assault. Plaintiffs' pain was intense; the painkillers prescribed to the Plaintiff were ineffective.

72. After almost 2 weeks of submitting medical requests, Plaintiff was called to sick call at the Division 6 medical dispensary. Plaintiff was called into a room by Defendant Doctor Yu. Upon walking into the room Defendant Yu stated: "you can walk, there's nothing wrong with your back; get out of my office." No examination took place.

73. Plaintiff then attempted to file grievances and submitted several requests. A sergeant in Division 6 sent Plaintiff to sick call for his injuries. Plaintiff was seen this time by Defendant Officer O'Mackey. After telling Defendant Officer O'Mackey his problem, he was provided a pack of Tylenol and told: "you're ok" - again no examination.

74. Both Doctors, Defendants Yu and Officer O'Mackey ignored Plaintiff's medical needs. Plaintiff, days later, was sent to Cermak Emergency by Sgt. Mathis because he could not walk due to the excruciating pain from Plaintiff's injuries. Plaintiff was seen by Doctor Williams at 1:00 a.m. and was given a shot and provided better medication.

75. Plaintiff's primary care doctor in Division 11 told Plaintiff: "your back injuries are for the rest of your life. I'm sending you to physical therapy. If physical therapy here does not get the job done, I'm sending you to outside physical therapy."

76. Months later, Plaintiff was taken to Stroder Hospital and saw a neurologist. The physician also prescribed physical therapy, which has not been provided to Plaintiff.

77. Plaintiff has not received a response from the medical department as to what is wrong with his lower back. Medical just reissues painkillers to Plaintiff that are ineffective along with stretching exercises.

#35127283_v3

78.     The Plaintiff is in great pain and his back does not work properly.  On information and belief, if Plaintiff is not properly provided with outside physical therapy and care as directed by Div. 11 primary care doctor, Plaintiff risks permanent disability.

79.     Upon Plaintiff getting out of segregation sometime in February, Plaintiff was placed on Tier 1-D in Div.-6-Cell #4.  The cell was 25 degrees cold as if Plaintiff was outside with frost on the window.  The window leaked water from the outside.  Mold was present on the walls and floor.  No ventilation existed in the cell, and the toilet did not flush properly.  Plaintiff could not read--as the lighting was insufficient and paint was pealing off the walls.  Despite Plaintiff's injuries, he had to jump up and down off the top bunk.  The tile was broken upon the floor as well.

80.     Plaintiff was forced to remain in that cell for 4 entire days in freezing temperatures, with cold showers, cockroaches, broken drain flies and mice.  After being on the Tier for a week, the Tier was condemned and Plaintiff was moved to another Tier.  The Superintendent and Tom Dart are responsible.

### Retaliation and Denial of Access to Muslim Religious Practices

81.     While in Division 6 after Plaintiff was released from segregation, Plaintiff was denied the right to purchase items from Commissary.  Plaintiff was then sent back to Division 11 and still was not able to purchase any items from Commissary.

82.     Plaintiff was told by the officer that:  "You're on the scared list."  Plaintiff attempted to inform Sgt. Edwards as to the problem.  Sgt. Edwards referred the problem to the Defendant Lt. Delitz.

83.     Defendant Delitz, after being frustrated with the Plaintiff, because of his repeated grievances, retaliated against the Plaintiff by maliciously moving the Plaintiff off of tier CG to tier BD - the Christian tier.  Everyone on the Christian tier is required to attend church every Sunday, bible studies and prayer circles daily.  If anyone refuses any of the above the inmate will be subject

14

to disciplinary action. Plaintiff explained to Defendant Delitz that he is a Muslim of the Islamic faith. Plaintiff was still forced to practice the Christian faith to avoid disciplinary action.

84.     Plaintiff would go to a corner to make his Salah-Muslim prayer and would be ridiculed and degraded by the Chaplain as to his Islamic faith in an attempt to humiliate the Plaintiff by bad-mouthing Islamic culture stating that: "the teachings of the Holy Quran are lies."

85.     Sgt. Nanos removed the Plaintiff off the Christian tier stating: "I know you're cheating for Cook Co. good time." Plaintiff tried to explain to Sgt. Nanos that he was moved down here maliciously. Defendant Nanos stated: "I'm placing you in the dirtiest tier in the building."

86.     While on Tier DJ Sgt. William instructed officers: "tear his cell up, mix his property, or whatever you want. This guy's a problem." The Plaintiff requested Sgt. Williams to not destroy his property. Sgt. Williams stated: "see I'm not your average Sgt., I know all about you being a constant problem to my co-workers and I know how to handle a problem child."

87.     Upon Plaintiff entering his cell, Plaintiff noticed several Commissary items stolen by the officers, his religious book and The Quran opened sitting under the toilet. Sgt. Williams is responsible for giving officers permission to steal and disrespect Plaintiff and his religion out of retaliation.

**Misuse of Force on March 14, 2014**

88.     While walking into the tunnel on March 14, 2014, Plaintiff was about to be unhand-cuffed by Defendant White. Words were exchanged and the Defendant then grabbed the Plaintiff by the neck and stated: "Your about to catch another case." Defendant then kneed the Plaintiff in the groin and punched the Plaintiff in the stomach. Then Defendant White stated: "I'm going to take these cuffs off you and I dare you to do something about it. By the time I'm through with you, you will be someone's bitch in Statesville." Defendant limped to court, requested medical attention and was told to go after court. When Plaintiff again requested medical attention after

15

court, Plaintiff was told to "wait until you're back at your division." Plaintiff received medical attention for his injuries on March 15, 2014.

89.     Plaintiff was charged with a criminal case almost 2 months after the January 25, 2014 assault by Defendant White. This case is pending before the Circuit Court of Cook County, despite Plaintiff being found not guilty at the disciplinary hearing.

### Deprivation of Ramadan and Halal Diets

90.     Plaintiff was denied accommodations for the fast for the month of Ramadan, 2014. Muslims are required to abstain from eating and drinking from pre-dawn until sunset. In order to ensure that this religious requirement is fulfilled, Plaintiff tried to save his food trays until after sunset.

91.     Security Guards, under the direct order and policies of Defendants Brantly, Murphy and Dart repeatedly "Shook Down" (search) Plaintiff's cell to harass and take the food that the Plaintiff saved. Defendants would then throw Plaintiff's food away. This would occur daily, leaving the Plaintiff with nothing to eat.

92.     Sgt. Williams on several occasions during Ramadan would shake down Plaintiff's cell deliberately to confiscate food he knew Plaintiff was saving to break his fast at sunset.

93.     Sgt. Nanos would also take the food Plaintiff was saving. Both of these sergeants knew their actions were wrongful, and they intended to prevent Plaintiff and others from practicing their Muslim religion.

94.     This occurred during the whole month of Ramadan and caused physical injuries, including emotional distress and anxiety/depression for Plaintiff. Plaintiff was tormented and humiliated because of his inability to practice his religion.

#35127283_v3

95.     Defendant Thomas Dart failed to implement a Ramadan accommodation policy. Defendant Dart is aware of what Ramadan is and is aware that detainees who practice Islam can only eat at prescribed times.

96.     Thomas Dart also ordered the throwing away of the Plaintiff's food as he created the policy and enforces it through his orders. Thomas Dart is fully aware that all inmates, in general, are to be served 3 diet meals per day by law. All inmates are provided three meals daily including 2 Hot Meals; and food shall never be withheld as a form of punishment or offered as a reward. All Defendants are required to follow these rules. Yet only 1 hot meal is given in CCDOC and the Defendants constantly withheld food to punish Plaintiff for his religious practice.

97.     Plaintiff was denied Ramadan diet trays and his mandatory 3 meals per day.

98.     Plaintiff suffered physical injuries, malnutrition and other medical issues due to Defendants Officers actions. Plaintiff also blacked out while praying, hitting his head on the ground in his cell. Plaintiff also experienced dizziness, nausea and fatigue which would not have occurred if Plaintiff had been properly fed.

99.     Plaintiff filed grievances as to this practice related to Ramadan, all to no avail. No action has been taken by the Defendants to ensure Plaintiff's right to practice Plaintiff's religion.

## Denial of Religious Prayer Rugs and Head Garments

100.     The Plaintiff, under Thomas Dart's orders, is not allowed prayer rugs or head garments because they are "contraband" and are identified with security threat groups. This policy is unconstitutional and is a current practice at CCDOC.

101.     During Ramadan and throughout Plaintiff's stay at CCDOC the Plaintiff was forced to pray on dirty floors. This is unsanitary and is current with no alternatives available.

102.     Adherents of Muslim faith are more heavily restricted then adherents of other faiths as follows.

17

A.   Christians are allowed to attend service multiple times per week even though the Muslim Chaplain is here the same amount of time as Christian Chaplains;

B.   Christians are provided more religious materials and religious literature, and more funding;

C.   Christians are provided leather bibles;

D.   Christians are given their very own tier in Division 11;

E.   The Christian Chaplain can donate reading glasses and passes out large toothpaste tubes containing aluminum;

F.   Stocking caps are sold on Commissary as "a religious head garment;"

G.   Christians on their tier receive good time credit for going to church in addition to prayers and bible studies;

H.   Muslims are not allowed cloth prayer rugs, head garments, and are unable to attend MRS for months on end. The actions of the defendants. Lt. Delitz, Lt. Rosorio, Lt. Tuggee, Sgt. Nanos, Superintendent Brantly, and the turning of a blind eye on part of John Murphy and Tom Dart -- violate the Plaintiff's right to free exercise of his Muslim religion. Sheets, towels, face rags, even stocking caps, sold on commissary are provided for other religions. A prayer rug and a Kofi are no more of a security threat then a towel or a stocking cap sold at the Commissary.

103.   Cloth prayer rugs and Kofies (which are allowed in IDOC) cannot be used as weapons; their denial is an unconstitutional policy.

## Denial of Halal Diets

104.   Plaintiff is also required by his religion to only eat Halal food, which is meat from animals that are slaughtered in a humane and religious manner. Halal food is similar to Kosher

18

diets that the Illinois Department of Corrections offers Jewish and Muslim diets. CCDOC does not offer Halal food.

105.    Plaintiff grieved this problem and case worker CRW Jewel attempted to coerce Plaintiff to accept a vegan/veggie diet instead. Plaintiff refused to sign a written acceptance of a vegan diet because he is Muslim and he is allowed to eat meat, just only Halal meats. It is clear that depriving Muslims of Halal diets and trying to declare a vegan diet as its replacement is improper.

106.    A denial of Halal diets by the CCDOC is unconstitutional and is a denial of Plaintiff's right to practice his Muslim religion.

### Retaliation for Grievances/Denial of Religious Services Div. 1

107.    Plaintiff was in Division II holding, after being cuffed to enter another bullpen-holding cell, where he was again threatened and verbally assaulted again by Defendant White. Defendant White stated: "I dropped you once, I'll drop you again and put another case on you." After receiving the first threat Plaintiff refused to respond while in fear for his life. Other detainees spoke in defense of the Plaintiff instructing Defendant White to stop his aggression and threats. White then stated to the Defendant: "I'm going to catch you off camera one of these days."

108.    Plaintiff went to court and, after returning from court, Plaintiff filed a grievance. Days later, Plaintiff was told to pack up. While on the way to the holding cell Plaintiff was confronted by the Defendant Lt. Delitz who stated: "Shaw you are a pain in my ass but I have a place for you. And guess what? Where you going there is not religious service and it's the nastiest part of the jail. You're done filing grievances in my division, good bye."

109.    While in the bullpen, Defendant Officers stated to Plaintiff that "you done pissed the wrong people off; "You can't beat them, complaining is not worth the trouble they can put you through."

19

110.    Plaintiff was transferred to Division 1 and a medium security tier in a building of mostly maximum-security offenders.  Plaintiff immediately put a request in for MRS.  Plaintiff never received a reply.

111.    Plaintiff's tier had no hot water, there was mold in showers, and leaks in the cell coming from the roof.  Plaintiff was given a frayed mattress from a pile where clearly the administration does not ensure that they are sprayed in between uses.

112.    From September 19, 2014 until October 4, 2014 Plaintiff was subjected to no hot water in his cell or on the tier, cold showers only.

113.    On October 13, 2014 Plaintiff was locked on Tier B4 without working toilets and no hot water on the Tier, the entire Tier reeked of feces.  The hot water was again not available; these current conditions are inadequate.

114.    Plaintiff spoke to Defendant Commander Cozzolino regarding MRS and he stated: "There is no religious service for you guys because it's too complicated."

115.    Plaintiff asked the Defendant Superintendent Greer about MRS and he stated: "I'm not concerned with that."

116.    Plaintiff then filed several grievances and Defendant Harris responded stating: "Maximum security tiers cannot attend service with medium security tiers due to their classification and background."

117.    Plaintiff, a medium security tier detainee, filed his grievance because it was processed as a request.  The Defendant Commander Harris replied indicating that this Plaintiff went to church previously.

20

118. Plaintiff has not been to one MRS in 5 months of being in Division 1. The maximum security tiers attend MRS frequently. Defendants refuse to implement a service which is fair to Plaintiff and other Muslim detainees who are in custody of Division 1.

119. The Defendants who are responsible for denying Plaintiff's right to attend to MRS in Division 1 are:

1) Thomas Dart because he oversees daily operations, gets reports and has knowledge of inmates attendance at religious services and other special services at the facility. He gets memoranda and emails from the Executive Director about the issues at the facility regarding Muslim Services. Thomas Dart has a personal involvement in the furtherance of these violations. Tom Dart creates and enforces these policies on religious services.

2) Executive Director John Murphy knows about these issues because it is a facility wide problem, not just in Divisions 1 and 2 and additionally because he receives reports directly related to MRS counts. John Murphy also oversees MRS operations.

3) Superintendent Greer is the Superintendent of Division 1 and he plans, directs and supervises all operations at CCDOC based on the policies and general philosophies of the Executive Director. He has personal involvement in the violations because he has a hand in furtherance of the SD policies and violations. He supervises and directs the divisions to not allow medium security tiers any access to MRS. Superintendent Greer has personal knowledge of these violations because records are maintained in the ordinary court of business which indicate which living units are provided with an opportunity to attend

services and how many detainees choose to attend or decline to attend. If religious services were not held, the record should reflect the reason for lack of service.

4)     Defendant Officers are personally involved in the denial of MRS because all detainees, not otherwise subject to disciplinary measures resulting from rule violations, shall be given equal access to attend religious services subject to space limitations and operational security concerns. Clearly, Plaintiff not being called once over 4 to 5 month period is not justifiable. Defendants cannot hide behind the guise of maximum security tiers.

120.    Defendant Officers were each aware of their actions regarding their denial of religious services for Plaintiff as this rule applies to all inmates.

121.    The Plaintiff also suffers emotionally and mentally from these violations.

**State Tort Law Claims for Assault and Battery**

122.    The Plaintiff also states a separate claim for assault and battery under Illinois tort law and requests this Honorable Court to take supplemental jurisdiction over this cause of action.

123.    The Defendant Officers each are responsible for the assault and battery upon Plaintiff in their official and individual capacities.

A.     Defendant White: Plaintiff observed him swinging his arm to strike the Plaintiff and he placed his knee on the Plaintiff's neck and face while in handcuffs. His intentional, harmful and excessive contact is an inappropriate use of force. Based upon his experience as a correctional officer, Defendant White knew that the Plaintiff would be seriously injured and put in harms way.

B.     Defendant Officer Torres: Plaintiff observed him grab Plaintiff's leg as he struck the Plaintiff, throwing Plaintiff to the ground using unwarranted force.

#35127283_v3

This harmful and excessive contact caused injuries to Plaintiff. In his experience and training, Defendant Officer Torres knew Plaintiff would be injured and put in harm's way.

C.   Defendant McKenzie:  Plaintiff observed him throwing handcuffs at the Plaintiff and his intentional, harmful and offensive contact is an inappropriate use of force.  He knew what plaintiff would be injured and put in harm's way.

D.   Defendant Ansel:  while Plaintiff was on the ground and handcuffed, Plaintiff observed Defendant Ansel dive his knees first into Plaintiff's back, and after Defendant Commander Cozzolino ordered Ansel to "let him up," Mr. Ansel then punched the Defendant in the head while in handcuffs.  These harmful and offensive acts were done intentionally to cause Plaintiff injuries.

E.   Defendants' Commander Cozzolino and Sgt. Santos:  both officers unnecessarily deprived Plaintiff of immediate medical attention causing Plaintiff to endure pain which could have been prevented.  Defendants intended to cause physical harm to Plaintiff by doing this.

F.   Defendant Yu:  His refusal to provide the Plaintiff with medical treatment was unjustified, in light of Plaintiff's significant injuries and complaints of excruciating pain.  Defendant Yu knew the Plaintiff could be further injured and in harms way and his acts were intentionally harmful which made plaintiff's pain worse.

G.   Defendant Lt. Delitz:  he maliciously moved the Plaintiff from Division 11 to Division 1 which is a "scared tier" knowing that the building suffers from unsanitary conditions and knowing the conditions of no hot water, vermin

#35127283_v3

infestation, leaks and mold. Defendant Delitz knew that there was a substantial likelihood of injuries to Plaintiff through this move.

H.    Defendants Dart, Murphy, and Brantly: Each officer was placed on notice of the abusive conduct of White by a number of complaints and grievances over many months. Plaintiff was even subjected to a second assault and several run-ins with Defendant White where Defendant White would taunt and intimidate the Plaintiff, over and over, placing the Plaintiff in fear for his life.

I.    Each Defendant Officer has failed to take disciplinary action against Defendant White, Ansel, or otherwise act to control his behavior.

**Additional Claims Against Sgt. Nanos, Sgt. Williams and**
**Lt. Tugge Personal Involvement**

124.    Sgt. Nanos was the sergeant assigned to the Division during the times the Imam (Chaplain) was at the CCDOC. Sgt. Williams was assigned as well. Their job was to call MRS for "C and D Pod" and they purposely chose not to for months on end, while knowing the Chaplain was here twice a week. They are each directly and personally responsible for depriving Plaintiff access to MRS. With their experience, it is impossible that they each simply neglected to call for months on end. Both are also personally responsible for throwing Plaintiff's food away. They each ordered officers to throw the food away that Plaintiff saved during Ramadan. Lt. Tuggee also approved of these acts knowingly and when confronted by the Plaintiff and others, he turned a blind eye.

**Count I – RLUIPA**

125.    Plaintiff realleges paragraphs 1 through 123 as if fully set forth herein.

126.    The allegations made heretofore in this Amended Complaint violate the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

24

127.    Plaintiff's Muslim religion is grounded in a sincerely held religious belief.

128.    The Defendants' actions substantially burdened Plaintiff's right to practice his Muslim Religion. Each of the Defendants' violations have substantially burdened Plaintiff's free exercise of his religion and the violations have had a substantial effect on interstate commerce.

129.    The CCDOC receives federal funds for their programs and the CCDOC failed to allow Muslim inmates the same rights afforded to inmates other religions as heretofore alleged in this Amended Complaint. The CCDOC has not given Plaintiff any reason regarding the gross burdens placed on his Muslim religious needs.

130.    The Plaintiff has exhausted all administrative remedies as heretofore alleged in the Amended Complaint.

## Relief Requested

Wherefore, Plaintiff request that the courts grant the following:

A.    Issue an injunction ordering Defendants' agents to

1.    To cease and desist from denying Plaintiff access to MRS and other religious practices as heretofore alleged in this Amended Complaint.

2.    Immediately arrange for the Plaintiff to undergo outside examination by a qualified physician.

3.    Immediately arrange for the Plaintiff's need for physical therapy or other follow-up medical treatment to be evaluated by a medical practitioner with expertise in the treatment and restoration of function of the lower back.

4.    Carryout without delay the treatment directed by such medical practitioner.

5.    Order CCDOC to take immediate corrective action based upon the allegations of the Amended Complaint.

#35127283_v3

B.    Award Plaintiff damages caused by the physical abuse, the assault and the battery of the Plaintiff by Defendants.

C.    Enter judgment against Defendants.

D.    Award Plaintiff compensatory and punitive damages.

E.    Award attorney's fees and costs.

F.    Award any further relief that this Honorable Court deems just.

## COUNT II
### 28 U.S.C. Section 1343, 42 U.S.C. Section 1983 and 28 U.S.C. 2201

131.    Plaintiff realleges paragraphs 1 through 129 as if fully set forth herein.

132.    The allegations made heretofore in this Amended Complaint violate 28 U.S.C. Section 1343, 42 U.S.C. Section 1983 and 28 U.S.C. 2201.

133.    Plaintiff's Muslim religion is grounded in a sincerely held religious belief.

134.    The Defendants' actions substantially burdened Plaintiff's right to practice his Muslim religion. Each of the Defendants' violations have substantially burdened Plaintiff's free exercise of his religion and the violations have had a substantial effect on interstate commerce.

135.    The CCDOC receives federal funds for their programs and the CCDOC failed to allow Muslim inmates the same rights afforded to inmates other religions as heretofore alleged in this Amended Complaint. The CCDOC has not given Plaintiff any reason regarding the gross burdens placed on his Muslim religious needs.

136.    The Plaintiff has exhausted all administrative remedies as heretofore alleged in the Amended Complaint.

### Relief Requested

Wherefore, Plaintiff request that the courts grant the following:

G.    Issue an injunction ordering Defendants' agents to

26

1.     To cease and desist from denying Plaintiff access to MRS and other religious practices as heretofore alleged in this Amended Complaint.

2.     Immediately arrange for the Plaintiff to undergo outside examination by a qualified physician.

3.     Immediately arrange for the Plaintiff's need for physical therapy or other follow-up medical treatment to be evaluated by a medical practitioner with expertise in the treatment and restoration of function of the lower back.

4.     Carryout without delay the treatment directed by such medical practitioner.

5.     Order CCDOC to take immediate corrective action based upon the allegations of the Amended Complaint.

H.     Award Plaintiff damages caused by the physical abuse, the assault and the battery of the Plaintiff by Defendants.

I.     Enter judgment against Defendants.

J.     Award Plaintiff compensatory and punitive damages.

K.     Award attorney's fees and costs.

Award any further relief that this Honorable Court deems just.

## <u>COUNT III</u>
### (Conscious Disregard of Plaintiff's Physical Safety)

137.     Plaintiff realleges paragraphs 1 through 135 as if fully set forth herein.

138.     Defendants' collective and individual conscious disregard of the imminent danger posed to Plaintiff by repeated threats, assaults, battery and inadequate living conditions created a substantial risk of serious harm to Plaintiff.

139.     By ignoring repeated threats, assaults, battery and by failing to place Plaintiff in protective custody, by continuing to house Plaintiff in a dormitory with unsanitary and insufficient

27

living conditions, Defendants were deliberately indifferent to the threats to Plaintiff's health and safety.

140.    Each of the Defendants was aware of the facts indicating that Plaintiff was likely to suffer physical and emotional injury from physical violence directed against Plaintiff.

141.    Defendants had a reasonable opportunity to prevent this physical violence and these living conditions but did nothing to prevent such conditions and, in fact, failed to properly supervise the Plaintiff's incarceration and failed to follow CCDOC regulations with respect to the housing of inmates.

142.    Defendants acted with deliberate indifference to the health and safety of the Plaintiff.

143.    Additionally, once the Plaintiff was beaten, Defendants acted with deliberate indifference in not providing Plaintiff with the immediate medical attention he needed, which resulted in needless pain and suffering.

144.    As a result of the actions of the Defendants, Plaintiff suffered extreme physical and emotional pain and suffering.

145.    The Plaintiff makes state law claims for willful and wanton misconduct and battery, as well as intentional infliction of emotional distress; and federal claims for failure for to intervene to prevent severe injury, deliberate indifference for allowing the Plaintiff to be beaten, and for the denial of Plaintiff's seriously needed medical care.

WHEREFORE, Plaintiff asks that this Honorable Court:

(a)    Enter judgment against Defendants;

(b)    Award Plaintiff compensatory and punitive damages;

(c)    Award attorney's fees and costs; and

#35127283_v3

(d)     Award any further relief that this Honorable Court deems just.

## COUNT IV
### (Failure to Intervene)

146.    Plaintiff realleges paragraphs 1 through 145 as if fully set forth herein.

147.    When Plaintiff was being attacked by Defendant White on January 25, 2014, Defendant Officers had an opportunity to intervene but chose not to do so.

148.    Defendant Officers were required to have Officers patrol and be present in common areas, such as washrooms and showers, so as to deter and to intervene where Defendant Officers seek to injure detainees.

149.    Defendant Officers were deliberately indifferent to the performance of their duties to patrol and to be present in common areas and were not present to intervene to prevent injury to Plaintiff from Defendant White and other Defendants.

150.    Defendants were deliberately indifferent to Plaintiff's right to be free from physical harm and abuse by Defendant White and other Defendants.

WHEREFORE, Plaintiff asks that this Honorable Court:

(a)     Enter judgment against Defendants;

(b)     Award Plaintiff compensatory and punitive damages;

(c)     Award attorney's fees and costs; and

(d)     Award any further relief that this Honorable Court deems just.

## COUNT V
### (Created Danger by Failing to Remove Dangerous Materials)

151.    Plaintiff realleges paragraphs 1 through 150 as if fully set forth herein.

29

152.    Defendants were under a duty, pursuant to CCDOC rules and regulations, to remove from cells and common areas, such as washrooms and showers, dangerous and unsanitary conditions.

153.    By failing to remove dangerous and unsanitary conditions from Plaintiff's cell, Defendants created a dangerous and life-threatening situation that Plaintiff would not otherwise have encountered.

154.    Defendants were deliberately indifferent to their duties to remove dangerous and unsanitary conditions so as not to endanger Plaintiff's health and safety.

155.    As a direct and proximate result of Defendants' deliberate indifference to such duties, Plaintiff physically.

WHEREFORE, Plaintiff asks that this Honorable Court:

(a)    Enter judgment against Defendants;

(b)    Award Plaintiff compensatory and punitive damages;

(c)    Award attorney's fees and costs; and

(d)    Award any further relief that this Honorable Court deems just.

## COUNT VI
### (Failure to Provide Prompt Medical Treatment)

156.    Plaintiff realleges paragraphs 1 through 155 as if fully set forth herein.

157.    Defendants were under a duty to provide Plaintiff with prompt and effective medical care for injuries Plaintiff received while a detainee at CCDOC.

158.    Rather than providing Plaintiff with prompt and effective medical care, Defendants subjected Plaintiff to ineffective medical care while Plaintiff was in severe physical pain due to injuries inflicted by Defendant Officers on January 25, 2014 and as more fully set forth in the Amended Complaint.

#35127283_v3

159.    Defendants were deliberately indifferent to Plaintiff's right to receive prompt and effective medical care following an attack by Defendant Officers which resulted in severe injuries to Plaintiff, including injuries to Plaintiff's back.

WHEREFORE, Plaintiff asks that this Honorable Court:

      (a)    Enter judgment against Defendants;

      (b)    Award Plaintiff compensatory and punitive damages;

      (c)    Award attorney's fees and costs; and

      (d)    Award any further relief that this Honorable Court deems just.

## COUNT VII
### (State Law Claim for Intentional Infliction of Emotional Distress)

160.    Plaintiff realleges paragraphs 1 through 159 as if fully set forth herein.

161.    The acts of Defendant Officers described herein above were extreme and outrageous.

162.    Defendant Officers intended to cause Plaintiff severe emotional distress or knew that there was a high probability their conduct would cause Plaintiff severe emotional distress.

163.    Defendant Officers' conduct caused Plaintiff severe emotional distress.

WHEREFORE, Plaintiff asks that this Honorable Court:

      (a)    Enter judgment against Defendants;

      (b)    Award Plaintiff compensatory and punitive damages;

      (c)    Award attorney's fees and costs; and

      (d)    Award any further relief that this Honorable Court deems just.

## COUNT VIII
### (State Law *Respondeat Superior* Claim)

164.    Plaintiff realleges paragraphs 1 through 163 as if fully set forth herein.

31

164.    The acts of Defendant Officers described in the above described state-law claims for intentional infliction of emotional distress were willful and wanton, and were committed in the scope of employment.

165.    Pursuant to *respondeat superior*, Defendant Cook County and other Defendants are liable for the agents' actions and failures to act.

WHEREFORE, Plaintiff demands judgment against Defendant, Cook County and other Defendants, and such other and additional relief that this Honorable Court deems just.

## COUNT IX
### (Indemnification Claim pursuant to 745 ILCS 10/9-102)

166.    Plaintiff realleges paragraphs 1 through 165 as if fully set forth herein.

167.    The acts of the Defendant fficers described in the claims above were willful and wanton, and were committed in the scope of employment.

168.    Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant Cook County is liable for any judgments for compensatory damages in this case arising from Defendant-Officers' actions or failure to act.

WHEREFORE, Plaintiff asks that this Honorable Court order the Defendant Cook County to indemnify the Defendant-Officers for any judgment for compensatory damages awarded in this case arising from their actions or inactions and for any other relief this Honorable Court deems just.

32

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

**CECIL SHAW**


  /s/ Adam R. Young
One of His Attorneys


Gregory R. Meeder
Adam R. Young
HOLLAND & KNIGHT LLP
131 S. Dearborn, 30th Floor
Chicago, Illinois 60603
Telephone: (312) 263-3600
Facsimile: (312) 578-6666
Email: gregory.meeder@hklaw.com
ARDC No. 6184414

33